IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JUDITH W. MAYNARD,<br><br>          Plaintiff,<br><br>v.<br><br>BRYAN W. CANNON, P.C.,<br><br>          Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:05CV335DAK |

This matter is before the court on Defendant's Motion for Summary Judgment. The court held a hearing on the motion on April 8, 2008. At the hearing, Plaintiff was represented by Ronald Ady, and Defendant was represented by George W. Burbidge II. The court has fully considered the pleadings and memoranda submitted by the parties as well as the facts and law relevant to the present motion. Accordingly, the court enters the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff brought this case under the Fair Debt Collections Practices Act ("FDCPA"). On November 15, 1999, Household Finance Corporation made a mortgage loan to Maynard in the amount of $131,536.06. The parties entered into a "Loan Repayment and Security Agreement" that gave Household a security interest in the Maynard's property. Maynard executed a Deed of

Trust identifying herself as the Trustor and Borrower and Household as the Beneficiary and Lender. The Deed of Trust granted Household a security interest in the property and referenced the loan agreement.

Defendant Bryan Cannon P.C. was hired by Household Finance Corporation to collect on Maynard's mortgage debt, which he was told was in default. On March 17, 2004, Cannon received copies of the parties' agreements, a HUD1/Net Settlement Statement, a "101" form that contained information regarding the loan, and an Attorney Foreclosure Referral from Household instructing him to proceed with foreclosure. Cannon agreed to conduct a non-judicial foreclosure under the Deed of Trust. Cannon was not asked to collect against Maynard personally.

On March 18, 2004, Household executed a Substitution of Trustee appointing Bryan W. Cannon as the Trustee of the Deed of Trust. On March 22, 2004, Cannon recorded this with the Salt Lake County Recorder. Also on March 22, 2004, Cannon filed a Notice of Default with the Salt Lake County Recorder. The next day, Cannon mailed copies of the Substitution of Trustee, the Notice of Default, and an FDCPA notice to Maynard. The Notice of Default identified the secured obligation as the "Note for the principal sum of $131,536.06," the original principle amount of the mortgage, and stated that the default was a failure to make "monthly payments in the total sum of $10,109.57, together with costs of foreclosure up to $1,500.00."

On April 5, 2004, Cannon received a fax from Mountain America Credit Union requesting a payoff from Household. This fax included an authorization for Cannon's office to obtain a payoff and a "Borrower Signature Authorization," which authorized Mountain America to verify Maynard's mortgage information. On April 6, 2004, Cannon sent an email to Household which referenced the loan and stated: "Mountain America Mortgage Company is

helping the customer refinance, we have written authorization from Judith Maynard to get a payoff on her loan, please provide ASAP." On April 6, 2004, Maynard received a copy of a payoff statement stating that the amount to payoff the account in full was $147,424,95.

On April 7, 2004, Maynard wrote to Cannon disputing the debt in its entirety and listing several problems that she had encountered with Household Finance. She stated that she had been trying to refinance the mortgage for years and had to get the Attorney General's office involved to get a payoff amount because Household Finance would not provide her with the amount. Maynard requested that Household follow through with their agreement to expunge her negative credit marks and extend the deadline for her credit union to be able to provide her with a mortgage loan to pay off Household. She also requested several items of information, such as copies of all documents provided to her when she obtained the loan, a complete accounting of her payments, and documents supporting all of the payoff amounts she was given along the way that were above the original mortgage loan.

On April 12, 2004, Cannon replied by letter acknowledging that he had received her letter and enclosing the documents his office had in its possession regarding the mortgage and foreclosure. Cannon affirmed the original balance of the mortgage and informed Maynard that he was forwarding her request for other information to Household Finance so that they could provide those details. On this same day, Cannon sent Maynard's letter to Household and requested that Household advise him "with a response to the letter, a pay-off statement on the account," and other information.

On April 15, 2004, Cannon's office notified Household that it had not received a payoff statement and again requested a payoff statement from Household. Despite making multiple

requests, Cannon's office never received a payoff statement for Maynard's Loan or an account of Maynard's payments. Maynard, however, received multiple payoff letters from Household, including at least one between April 7 and April 19, 2004.

On April 19, 2004, Maynard wrote another letter to Cannon stating that his response was inadequate and explaining why she required a present mortgage balance and payment history. Cannon forwarded Maynard's second letter to Household. Household told Cannon that it was dealing directly with Maynard and that it would take care of it. Household told Cannon that it did not want Cannon to communicate with Maynard any further. Cannon had no further communication with Maynard.

Maynard and Mountain America, however, continued to have telephone conversations directly with Household. At the end of April 2004, Maynard negotiated an agreement whereby Household agreed to accept $117,00 as payment in full on the loan. Cannon was not informed by anyone that Household and Maynard had reached a settlement until June, 2004. Cannon recorded a cancellation of Notice of Default in the County Recorder's office on June 25, 2004.

## DISCUSSION

### Motion for Summary Judgment

Defendant argues that its actions to initiate a nonjudicial foreclose of Maynard's Deed of Trust were not subject to the FDCPA. Although one court has stated that "[n]early every court that has addressed the question has held that foreclosing a mortgage is not debt collection activity for purposes of the FDCPA," *Beadle v. Haughey*, 2005 WL 300060 (D. N.H. Feb. 9, 2005), that is not the case. There is no Tenth Circuit case law on this specific issue, and cases around the country appear to be split over the application of the FDCPA to mortgage foreclosure actions.

Several courts have found that attorneys foreclosing on mortgages fell under the requirements of the FDCPA. *Wilson v. Draper & Goldberg*, 443 F.3d 373 (4th Cir. 2006), *Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006), *Levin v. Klluever & Platt*, 2003 WL 22757763 (N.D. Ill. Nov. 19, 2003), *Blum v. Fisher & Fisher*, 961 F. Supp. 1218 (N.D. Ill. 1997), *Wehrheim v. Secrest,* 2002 WL 31427515 (S.D. Ind. Oct. 9 2002). All of these foreclosure cases, however, appear to involve judicial foreclosures whereas the present case involves a nonjudicial foreclosure. In *Beadle*, the court recognized several cases in which foreclosure has been held to be debt collection, but those cases involved judicial rather than non-judicial foreclosure as well as a personal judgment against the property owner. 2005 WL 300060 at *3. But judicial foreclosure cases against an individual property owner are distinguishable from a nonjudicial foreclosure against the property.

In *Rosado v. Taylor*, the court found that "[s]ecurity enforcement activities fall outside the scope of the FDCPA because they aren't debt collection practices." 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004). The court cites to several provision of the FDCPA distinguishing between debt collection and security enforcement. *Id.* In *Rosado*, the court stated that "[t]he most frequently cited case attributes the different treatment of security interests and debts to the target's ability to comply with the request made of her." *Id.* (citing *Jordan v. Kent Recovery Serv.,Inc.*, 731 F. Supp. 652, 656 (D. Del. 1990)). "One receiving debt collection letters may agonize that she cannot comply with them, hence she needs the Act's protection. One asked to comply with a security interest enforcement request, on the other hand, has the security that she can return." *Id.* at 924-25.

Also, in *Hulse v. Ocwen Federal Bank, FSB*, 195 F. Supp. 2d 1188 (D. Or. 2002), the

5

court articulated the distinction between foreclosing a trust deed from the collection of funds from a debtor on the basis that "with a trust deed, the trustee possesses the power of sale which may be exercised after a breach of the obligation for which the transfer in trust of the interest in real property is security." *Id.* at 1204.  The *Hulse* court held that actions taken by attorneys "as part of the foreclosure may not be challenged as FDCPA violations." *Id.* at 1210.

Most courts recognize that there is a provision in the FDCPA, 15 U.S.C. § 1692f(6), which applies to the enforcement of security interests.  The Sixth Circuit has recognized that "except for purposes of § 1692f(6), an enforcer of a security interest . . . does not meet the statutory definition of a debt collector under the FDCPA." *Montgomery v. Huntington Bank*, 346 F.3d 693, 700-01 (6th Cir. 2003).  But, in *Kaltenbach v. Richards*, the Fifth Circuit held that "a party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA even when enforcing a security interests." *Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006).  Therefore, some courts engage in a discussion of whether the party at issue qualifies as a debt collector under the general debt collector provision even if the party is only enforcing a security interest.

Under the FDCPA, a debt collector is defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another . . . . For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6).

There is no evidence in this case that Defendant falls within the general provisions of the definition of debt collector.  There is no evidence as to the frequency of Defendant's security enforcement or debt collection practices.     In this case, Household hired Defendant for the limited purpose of non-judicially foreclosing the Deed of Trust.  Household did not sell or assign or even transfer to Defendant the debt evidenced by the Note.  Nor did Household authorize Defendant to negotiate Maynard's debt with her.  Household and Maynard communicated directly even after Defendant filed the Notice of Default.  Defendant only agreed to enforce a security agreement by commencing a nonjudicial foreclosure of the Deed of Trust.  Had Maynard not refinanced her loan and paid off the Note, Defendant's involvement would have ended in a Trustee's sale.  Although a deficiency action could arise from the sale, it is a separate action.  And the facts submitted demonstrate that Household does not use Defendant for deficiency actions.  Defendant was not engaged to collect a debt from Maynard, only to initiate a non-judicial foreclosure by enforcing the security interest.  Therefore, Defendant's activities fall outside the FDCPA's general provisions.  If a party falls only within the security interest provisions of the definition, then they "are subject only to this provision [§1692f(6)] and not to the rest of the FDCPA." *Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act*, 53 Fed. Reg. 50097 (1988) (December 13, 1988).

Plaintiff cites to the venue provision in the FDCPA to assert that the enforcement of a security interest was intended to fall within the FDCPA.  The venue provision provides that "in the case of an action to enforce an interest in real property securing the consumer's obligation, [the debt collector shall] bring such action in a judicial district or similar legal entity in which such real property is located."  15 U.S.C. § 1692i(a)(1).  This provision, however, specifically

deals with judicial foreclosures, not nonjudicial foreclosures as is present in this case.

Plaintiff also argues that in a mortgage foreclosure action, the Tenth Circuit held that a mortgagor had standing to sue under the FDCPA for alleged violations of the FDCPA by the attorney for the mortgagee. *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208 (10th Cir. 2006). In *Robey*, however, the defendants filed a judicial foreclosure action against the plaintiff that requested a money judgment, judgment of foreclosure, and additional relief including attorney's fees. The plaintiff claimed that the request for attorney's fees violated the FDCPA. The Tenth Circuit first determined that by claiming that the defendants attempted to collect fees not permitted under state law the plaintiff had alleged an injury in fact under the FDCPA. The court, after turning to the merits, affirmed dismissal of the FDCPA claims because Oklahoma law permitted the recovery of a reasonable attorney's fee in a mortgage foreclosure action. *Id.* at 1213.

In this case, Defendant agreed to enforce a security interest in a Deed of Trust. Defendant did not agree to collect any debt against Maynard personally. The FDCPA Notice that Defendant mailed to Maynard with the Notice of Default did not notify Maynard that Defendant was seeking recovery against her personally.

Plaintiff, however, asserts that by using the validation notice to collect from the Plaintiff, Cannon brought himself within the prohibitions of the FDCPA. Although the court concludes that only the security enforcement provisions of the FDCPA should apply to Defendant, the court recognizes that the use of an FDCPA notice is problematic. However, even if Defendant's actions fell under the FDCPA's requirements, the court concludes that Defendant did not violate the FDCPA by recording the Notice of Default.

Maynard alleges that the recording of the Notice of Default with the County Recorder was a communication with third parties about Maynard's debt in violation of 15 U.S.C. § 1692c(b).  But the Notice of Default did not violate the FDCPA because Maynard gave her prior consent to the trustee of the Deed of Trust.  Under the FDCPA a debt collector cannot communicate with third parties in connection with the collection of any debt "without the prior consent of the consumer given directly to the debt collector."  15 U.S.C. § 1962c(b).  When Maynard executed the Deed of Trust she agreed to allow the Trustee to record a Notice of Default in the event of the default.  Cannon became the trustee of the Deed of Trust prior to filing the Notice of Default.  Therefore, the Notice of Default did not violate the FDCPA.

In *Shimek v. Weissman, Nowack, Curry & Wilcon, P.C.*, 374 F.3d 1011 (11th Cir. 2004), the court ruled that the filing of a lien with a court clerk did not violate the FDCPA because "the filing of a lien by a creditor is a necessary step for securing payment of a debt" under Georgia law.  The court noticed that the FDCPA "does not extinguish a creditor's right to secure a debt under state law, but instead merely prohibits deceptive collection techniques."  *Id.*

Utah statutes require the trustee to record a notice of default as the first step in a non-judicial foreclosure proceeding.  Utah Code Ann. § 57-1-23.  The notice must contain a statement that a breach of an obligation has occurred and set forth the nature of the breach.  *Id.* § 57-1-24.  The intent behind the FDCPA was to prohibit abusive collections practices, not to outlaw foreclosures when there is an express security agreement and breach of an obligation.  The FDCPA is not so broad as to prohibit a trustee from recording a notice of default as required by Utah law.

In addition, Defendant was not required to cancel the notice of default upon receiving

9

Maynard's letter disputing the debt. Maynard alleges that the Notice of Default constituted a continuing attempt to collect a debt and an ongoing communication with third parties about a debt in violation of the FDCPA. This, however, is not supported by the requirements or language of the FDCPA. Even if the FDCPA is applicable to this case, it only requires a debt collector to "cease collection of the debt" after receiving a request for verification. 15 U.S.C. § 1692g[b]. The FDCPA does not require an action to be undone. It is clear that Defendant took no further action to move the foreclosure forward after he received Maynard's letters. Defendant contacted Household regarding Maynard's requests in an effort to facilitate the resolution of the matter.

This court previously ruled that there may have been problems with the verification of Maynard's actual debt amount. However, discovery conducted following the court's decision revealed that Maynard was not provided information as to the outstanding amount she owed on her loan. Maynard received payoff statements in April 2004 from Household disclosing the outstanding debt amount and payoff amount. Maynard admits to receiving these communications directly from Household. The Notice of Default also indicated that the alleged default was a failure to make "monthly payments in the total sum of $10,109.57, together with costs of foreclosure up to $1,500.00."

Utah's non-judicial foreclosure statutes expressly allow trust deed beneficiaries to receive and respond to requests for reinstatement or payoff requirements and handle reinstatement and payoff funds. Utah Code Ann. § 57-1-21.5(1), (2). In this case, Household was the beneficiary of the Deed of Trust. It received and responded to Maynard's requests for payoff requirements and handle the payoff funds.

Furthermore, Defendant did not engage in unfair practices because the Notice of Default

included a reference to the Note for the principal sum of $131,536.06.  The Notice of Default included information required by Utah Code Ann. § 57-1-24(1).  The notice described the Deed of Trust by identifying the original principal amount of the loan.  Defendant did not attempt to collect the original principal amount of the Loan by included the amount in the Notice of Default. Maynard had stopped making payments on her loan prior to the time that Defendant recorded the Notice of Default.  When Defendant recorded the Notice of Default, the total amount due on the Note secured by the Deed of Trust was approximately $147,424.95.  The notice listed the amount of payments that were in default.  While Maynard has argued that Household incorrectly calculated the balance of her Loan in various payoff statements, she has failed to produce anything that she claims to be the correct amount.  In addition, the amount the parties eventually agreed to in their settlement is irrelevant to the discussion of whether Defendant complied with the FDCPA.  Moreover, Maynard's claims regarding Defendant's failure to verify the debt ignores the fact that she continued to have communications with Household during this time period.  Household sent her payoff notices in April 2004.  Defendant made no attempt to collect amounts greater than were owed.  Cannon's letter responding to Maynard inadvertently referred to the original principal amount, but the actual amount was above the principal amount.

      The court concludes, therefore, that even if the provisions of the FDCPA were to apply to Defendant's actions in this case, Defendant did not violate the FDCPA as a matter of law. Accordingly, The court finds that Defendant is entitled to summary judgment.

## CONCLUSION

      Based on the above reasoning, Defendant's Motion for Summary Judgment is GRANTED.  Plaintiff's case is dismissed, and the parties shall bear her and its own fees and

costs.

       DATED this 16th day of June, 2008.

                                              _____
                                              DALE A. KIMBALL
                                              United States District Judge